Mr. Justice Hagner
delivered the opinion of the Court :
. In each of these cases a judgment upon verdict was entered in the special term in favor of the plaintiff, and sustained by the General Term. On writ of error these rulings were affirmed by the Supreme Court of the United States, and' on the 19th of May, 1890, a mandate in each case was transmitted to this court reciting that the judgment had been affirmed with costs, and in the usual phraseology, *158 •commanding that, “ such execution and proceedings be had in said cause as, according to right and justice and the laws of the United States, ought to be had, the said writ of •error notwithstanding.”
After the mandates had been filed, the plaintiff in each case, by his counsel, made application to this court in General Term, representing that he had applied to the clerk to •enter the affirmance of the judgment with interest thereon and costs; but that the clerk, in consequence of the objection made by the defendants in said judgment, had declined to enter the judgment with interest, without the order of the court, and requesting that an order should be given to that effect. The motion was opposed by the counsel ‘of the defendants, who insisted the judgments should be entered without interest; first, because the mandates were silent on the subject of interest; and, second, because interest should never be allowed upon judgments rendered in actions founded on torts like those in the cases before us ; McDade’s recovery having been for damages sustained by him while working in the shops of the Washington and Georgetown Railroad Company, in consequence of its alleged failure to provide safe machinery; and Woodbury having recovered judgment against the District of Columbia for injuries received from falling into an unprotected hole in one of the sidewalks of Washington City.
This court has heretofore expressed its opinion upon' the general subject.of interest upon judgments as it was presented to us on several occasions. It is proper to state the points presented and the rulings made in four reported cases in which the question was considered in different phases.
In District of Columbia vs. The Baltimore and Potomac Railroad Company, 1 Mackey, 327, the plaintiff sued to recover the amount it had been compelled to pay to one Barnes on a judgment recovered by him against the municipality for injuries sustained by falling into an unprotected *159 tunnel in process of construction by the railroad company. After affirmance by the Supreme Court, the District settled the judgment. In turn the District sued the company for re-imbursement of the amount so paid, and recovered a verdict for that sum, which was composed of the principal of the Barnes judgment, with costs and interest upon that judgment. On appeal the General Term held this interest was properly recoverable by the District; which must have been on the assumption that interest was properly chargeable upon the judgment in tort recovered by Barnes against the District.
In October, 1882, the Supreme Court sent down its mandate in the case of The Fifth Baptist Church vs. The Baltimore and Potomac Railroad Company (an action in tort) affirming the rulings of the General Term. The mandate declared it was “adjudged and ordered by the Supreme Court that the judgment of the General Term should be affirmed, with costs and interest until paid, at thé same rate per annum that similar judgments bear in the courts of the District of Columbia.” The defendant tendered payment of the judgment and costs without interest, which was refused by the plaintiff; and, thereupon, the railroad company prayed the General Term to order the judgment to be entered satisfied upon payment of the principal of the judgment and costs, without interest. The court in 2 Mackey, 458, held the words in the mandate requiring interest to be paid on the judgment “ at the same rate per annum that similar judgments bear in the courts of the District of Columbia,” were not to be understood as indicating a difference in the rule as to giving interest on judgments in tort and - judgments on contract, but merely as declaring that the interest in that case was to be at no higher or lower rate than was by law given on judgments in this District. The justice who “delivered the opinion of the court proceeded to express his individual opinion that a judgment in tort in this District bears interest from its rendition to its satisfaction.
*160 In 3 Mackey, 501, Railroad vs. Hetzel, an action sounding in tort, the General Term had entered judgment upon a mandate affirming the ruling of this court, with interest from the date of the original judgment. The mandate was silent in that case as to interest. After the entry of the-judgment here the railroad company made a motion to strike out the entry of interest upon the same grounds relied on in the present application; and also filed a bill in equity substantially presenting the same objections. The-General Term overruled the application, Chief Justice Cartter delivering the opinion, which concluded as follows:
“We do not have to decide in this hearing whether a judgment in tort carries interest in this District. Ordinarily, a judgment in tort does not carry interest; still there are indications in our statutes that it does. We had that subject under consideration in Baptist Church vs. B. & P. RR. Co., 2 Mackey, 458, and though it was not necessary to decide it, and we'made no decision, we were all of the opinion that such ought to be the law. It certainly is justice in the present case that interest should follow. The question came up when we entered the judgment on the mandate. There was nothing irregular about the entry of judgment, and it is now too late to reverse or alter it.”
In Hellen vs. Metropolitan Railroad Company, 4 Mackey, 519, which was an action in tort for injury to the plaintiff from having been run over by one of the defendant’s cars, judgment was rendered in the Circuit Court for $1,500, with interest from the date of its rendition. The defendant objected to the allowance upon the ground that judgments in tort do not bear interest in this District, and the question was certified to the court in General Term to be heard in the first instance. The foregoing cases and the provisions of the Revised Statutes were cited, and after-argument by both sides the opinion of the court was announced in these words: “We do not doubt that judgments founded in tort, like those based on actions ex con *161 tradu, bear interest in this jurisdiction from the date of rendition. The objection is therefore overruled.” In these cases six of the justices of the court have participated, viz., Chief Justice Cartter, and Justices Wylie, Cox, James, Merrick, and myself. The result of these decisions appeared to have settled the practice of this.court in favor of the contention of the plaintiff; but we have proceeded, nevertheless, to re-examiné the question, and will give the reasons why we think those decisions were correct, and should be sustained.
In 1879, Congress undertook to legislate upon a subject at that time much agitated,namely, whether persons should be allowed by law to contract for a higher rate of interest than that then in existence in the District; and the Act of April 29 of that year, Chap. 59, was passed as a comprehensive statute disposing definitely of the entire subject. Some of its provisions were new, and the others expressed the existing law. Section 713, as it now appears in the revision, partakes of both features; so much as relates to interest upon decrees was new legislation; the rest was but a declaration of the law then prevailing in the District; but as to tí&th judgments and decrees there was a positive declaration of the law-making power, that “The rate of interest upon judgments or decrees, and upon the loan or forbearance of any money, goods or things in action,' shall continue to be six dollars upon one hundred dollars for one year, and after that rate for a greater or less sum, or for a longer or shorter time, except as provided in this chapter.”
Congress had the right to pass such a law, and its provisions are as binding as those of any other constitutional statute. There is no more discrimination expressed as to the origin of the judgments and decrees which thenceforth were to bear 6 per cent, interest, than there is wdth respect to the nature of the other money obligations comprehended in the enumeration. In the latter case, wdiether the indebtedness was in fact the settlement for some wrong inflicted *162 by the debtor upon the creditor, or was an ordinary loan of money, the interest was equally to be reckoned upon the amount; and there is nothing more in the act to indicate that judgments or decrees that might have had their origin in actions in tort were to be excluded from the law, than that such judgments and decrees as had their origin in contracts, should be excluded. The words are general, and must be held to comprehend all judgments and decrees, whether of one description or the other. In the face of such plain and comprehensive language, there remains no room for construction, and the courts have no right to make a discrimination between judgments of different origin, which the legislature had refused to make. If the statute means what it says, it confers rights on parties which must be recognized, and which the courts are powerless to take away.
A judgment rendered in an action in tort may become the subject of a decree in equity, subjecting the debtor’s property interests to its operation. Could it be successfully contended that a decree, setting aside a defendant’s deed as fraudulent, and ordering a sale of the property to pay a judgment, or directing his equitable interest thereift to be sold to satisfy a judgment against a party, should not bear interest, because the judgment which it is sought to enforce, had been recovered in an aggravated action of tort, and the wrongdoer had endeavored to defraud the injured plaintiff by conveying away all his property, and thus rendering a decree in chancery necessary to obtain payment? The reply would be, that Congress had declared that interest upon decrees shall be at the rate of 6 per cent.; not upon some decrees, but upon decrees generally, and hence, that such a decree properly bore interest, and since interest would go upon such a decree, why should it not equally be given upon the judgment itself?
But, it is argued that originally interest was never computed upon judgments in tort, and therefore the language *163 ■of this statute should be construed as not applicable to that class of judgments. But it was surely competent for Congress to alter such a rule; and if words adequate to accom-, plisli such change are used, the courts have no right to. limit their effects because to give full force to the language would recognize a change from the former rule, or in other’ words, would accomplish what Congress intended.
It is true, interest at common law did not run upon judgments in tort. Neither was interest allowed at common law upon judgments of any description. It required the enactment of a second statute in the reign of Henry VII to com-’ pel the courts to enforce a prior law of the same reign, which had authorized the successful plaintiff on a writ of error “ to recover his costs and damages for his delay and wrongful vexation” resulting from the defendant suing out the writ. Until the statute of Henry VIII, legalizing the reception of interest people in general, as well as by Jews, the courts were naturally reluctant to resort to the addition of interest-to judgments under the name of “ damages.” But after the almost inveterate prejudice against the reception of interest had disappeared under the influence of legislation and more enlightened opinion the courts determined to’enforce, the statute of Henry VII, by requiring the defendant to pay interest on the judgment, to be added to the costs by way of damages. 2 Sellon’s Practice, 446. The statutes of Henry VII made no discrimination as to whether the judgments, referred to should be rendered in actions in tort, or in actions iex contractu. Both these statutes were in force in Maryland at the’ organization of this District. Kilty’s Deport on the Statutes, 128, 230. See Hook vs. Boteler, 3 H. & McH., 348, where the General Court, in 1793, in an action to recover, money, lost at gaming, gave judgment for the amount.“¿£l20 ' current money, damages and costs.”
In 1781, it had been decided by Lord Mansfield, Douglass, 721, Zinck vs. Langton, that interest should be the measure of the damages mentioned in the Statutes of Henry *164 VII; and a similar ruling was made by Justice Buller ini Entwistle vs. Shepherd, 2 Term Rep., 70, in an action on a judgment in 1787. A few years after these decisions, the Judiciary Act of 1789, Chap. 20, was passed; and by Sec. 23-(now Sec. 1010 of the Revised Statutes of the United States), it was declared “where, upon a writ of error, judgment is. affirmed in the Supreme Court, or a Circuit Court, the court shall adjudge to the respondent in error just damages for his delay, and single or double costs at its discretion.” The Supreme Court construed this statute in accordance with the practice established by the English courts a few years previously, and in 1803 passed a rule, No. 17, declaring that the “ damages should be awarded by an allowance of interest at 6 per centum upon the judgment when it appeared there was a real controversy; and by Rule 18, it allowed interest at 10 per centum by way of damages when it appeared the appeal was taken merely for delay. In the case of Mitchell vs. Harmony, 13 Howard, 115, at December Term, 1857, which was an appeal from the Circuit Court in New York, the Supreme Court affirmed the judgment below and awarded interest at 6 per cent, under these rules. An application was made to the court to allow the plaintiff interest at the rate of 7 per cent., the legal rate in the State of New' York ; but the court denied the application, as Rule 17 was still in force, and limited the interest to 6 per cent. But at the close of that term the rule was modified, and rule 62 was passed, w'hich declared that interest should be levied from the date of the judgment until paid, “at the same rate that similar judgments bear interest in the courts of the State w'here such judgment was rendered,” and that the same rate should apply to decrees unless otherwise ordered. The present rule, No. 23, embodies the same provisions.
In 1852 the Supreme Court had affirmed a judgment from the Circuit Court of the Southern District of Mississippi in the case of Perkins vs. Fourniquet, 14 How., 313, with costs and damages, at the rate of 6 per cent, per *165 annum, and a mandate issued reciting the judgment and directing it to be carried into execution. An execution was issued from the Mississippi court commanding the marshal to levy the amount of the original judgment with the Mississippi interest of 8 per cent., together with the damages referred to in the mandate of 6 per cent, interest, making together interest at 14 per cent, upon the judgment. At the next term the Supreme Court held that as the amended rule liad not then been passed, the interest •collectible upon the judgment by way of damages was limited to the 6 per cent, named in the mandate. The court took occasion to say that the mandate in this case and that in Mitchell vs. Harmony were in the usual form — the same that had been used since the adoption of the rules in 1803. 14 How., 336.
The cases show that the modification of Rule 17 to the form of the present Rule No. 23, was made with no intention of discriminating between different kinds of judgments, but was merely designed to accomodate the rate of interest allowed by way of damages on affirmance, to the different rates of interest then prevailing in the several States. If a uniform rate of 6 per cent, were retained, the judgment •creditor in New York, or other States where a higher rate of interest existed, would not be indemnified for the delay incident to the appeal; and hence the provision that the rate should be regulated by the prevailing rate in the State where the judgment was recovered was reasonable and just.
Neither the Act of 1789 nor either of the rules of the Supreme Court made any discrimination between the different kinds of judgments, as to the.allowance of interest.
The case of Mitchell vs. Harmony, 13 How., 115, before referred to, was an action in trespass by the plaintiff to recover damages for the seizure of his property in New Mexico by officers of the United States Army during the Mexican War, which would certainly seem to' possess the characteristics of an action in tort; but the Supreme Court- *166 on affirming the judgment rendered for the plaintiff below allowed interest at 6 per cent, from its rendition, amounting to $8,700, by way of damages.
Section 966 of the Revised Statutes (August 23, 1842), declares that “interest shall be allowed on all judgments in civil causes recovered in a circuit or district court, and maybe levied by the-marshal under process of execution issued thereon, in all cases where, by the law of the State in which such court is held, interest may be levied under process of execution on judgments recovered in the courts of such State; and it shall be calculated from the date of the j udgment at such rate as is allowed by law on j udgments recovered in the courts of such State.”
. If this provision is applicable to the District of Columbia? it is conclusive of the right to compute interest upon all judgments rendered in the courts of the District. The allowance of interest is to be made on all judgments in civil cases, and certainly a judgment in an action of tort is obtained in a civil cause.
It is true the section speaks of circuit and district courts and of the laws of the State in which said courts may be held ; but our system includes by name courts with those designations; and we exercise all the jurisdiction of circuit and district courts of the United States in addition to that given by the adoption of the Maryland laws and by special acts of Congress. Though the District of Columbia is without the autonomy of the States, it has yet been recognized as a State in the sense of being a separate political community (Bank vs. Dyer, 14 Peters), and the expression “States of the Union,” used in a treaty, has been held to include the District of. Columbia. Geoffroy vs. Riggs, 133 U. S., 270. No good reason can be assigned why this section should not be held to apply to the courts of our system in this District; a construction which the people of the country, generally, are as much interested in having sustained as those resident here.
*167 The Supreme Court has repeatedly treated the section as applicable here, by inserting in its mandates the statement (taken from its rules, founded upon Section 966), that the judgment has been “affirmed, with costs and interest at the same rate per annum that similar judgments bear in the courts of the District of Columbia.” Such was the form of the mandate in Baptist Church vs. Railroad, 2 Mackey, 458. The same language was used in the mandate sent down in October, 1875, in the ease of the Baltimore and Potomac Railroad vs. Trustees Sixth Presbyterian Church, which was not an action ex contractu, but a judgment given upon an inquisition of damages for injury to their property by the laying of the railroad tracks in front of the church; and in the mandate in the case of Beall and Wife vs. Baltimore and Ohio Railroad Co., an action to recover for injuries to the wife, which was sent down in May, 1879, Doubtless a search would disclose many similar mandates.
Of course none were sent in the cases in tort where the appeals were dismissed for want of jurisdiction; as in Grant’s Case, 98 U. S., where the judgment in November. 1875, in the General Term was $2,000 “ with interest thereon from the date of. the verdict in the special term, March 22,1875.”
But if Section 966 should be held to be not applicable to the District, this general declaration of the sense of Congress that justice requires interest to be allowed on all judgments, would certainly conduce to support the view we take of the plain provisions of Section 713 of the Revised Statutes of the District, that all judgments and decrees shall continue to bear interest at the rate of 6 per cent.
The language of Section 997, article “ Justice of the Peace ” of the Revised Statutes of the District of Columbia is in consonance with this view.
It declares that “justices of the peace shall have jurisdiction in all cases where the amount claimed to be due for debt or damages arising out of contracts, express or implied, *168 or damages for wrongs or injuries to, persons or property, does not exceed $100, except in cases involving the title to real estate; actions to recover damages for assault,” &c. Section 1007 of the same article, declares that “judgments shall bear interest from their date until paid or satisfied.” This, of course, must be held to comprehend all judgments that can be rendered by justices of the peace within the jurisdiction conferred on them by Section 997, including judgments in tort. Can it be supposed that Congress intended to allow interest upon judgments in tort rendered by justices of the peace, and to deny its allowance upon judgments of the same description rendered by the Supreme Court of the District in the same juridisetion ?
Again, a justice of the peace gives judgment for the plaintiff in a case before him on which interest goes under Section 1010, for damages in an action of tort. An appeal is taken to this court under the law, and the plaintiff again succeeds. Can it be that the new judgment, which becomes a judgment of this court, shall not bear interest, because sounding in tort, in the face of the provisions of Section 1010? As was said in 2 Mackey, 465, “we should expect to find symmetry rather than needless disagreement in essential parts of the same system.”
We have examined the earliest attainable records of this court, as far back as 1803, and find the judgments in actions of contract were entered for a principal sum with interest thereon.
But in 1812 Congress passed a law (Revised Statutes, Section 829), which declared, “ Upon all judgments rendered on the common law side of the court in actions founded on contracts, interest at the rate of 6 per centum per annum shall be awarded on the principal sum due, until the judgment shall be satisfied ; and the amount which is to bear interest, and the time, from which it is to be paid shall be ascertained by the verdict of the jury in this cause.” The provision expressed in the last member of the section *169 ■was'an innovation.on the previous practice. The new rule, however just and appropriate to actions on contract, would have been entirely inapplicable to actions in tort. In the former, the jury decides that at a designated day, before the .suit was brought, a certain sum was 'due or payable to the plaintiff, and they could therefore fix the date from which interest should be charged on the sum thus improperly withheld; and in calculating interest on the judgment to be entered on their verdict, it was henceforth allowed to be reckoned from the day “ ascertained ” by the jury, instead of charging it only from the date of the-judgment, as previously.
But different considerations necessarily applied to' verdicts in tort, and the new law properly omitted them from its operation. In such cases the jury could name no previous day at which the damages they were to find could be considered properly payable, and they could only return such specific sum as, in their opinion, should justly be recovered, as of the day. of the verdict. When the verdict was rendered for that sum, the judgment was entered for the amount, and interest was only chargeable on the judgment from that day. The omission' of judgments in tort-from the operation of this act liad, therefore, no bearing upon the question whether interest should be given upon judgments in such cases, and was not designed to change the existing practice in that respect. But if such had been the effect of the' Act of 1812, the subsequent legislation of 1870, Section '713, would have nullified the distinction, when it provided that all judgments should •continue to bear interest at 6 per cent.
From the early days of this court there have existed rules for the guidance of the clerk for entering verdicts and judgments. The publication in 1869 contained the same language on this subject as is used in Rule 51 in the edition of 1886.
“A general, verdict for the plaintiff shall be recorded *170 thus. “The jury on their oath say they find the issue aforesaid, in favor of the plaintiff, and that the money payable to him by the defendant by reason of the premises is the sum of $-, besides costs.” If the action be founded on contract, the record of the verdict shall proceed, “ with lawful interest from the-day of-, besides costs.”
■ Rule 67 gives the form in which judgment shall be entered upon verdict as follows:
“Whatever the form of action may be, if the judgment be for the recovery of money, it shall be awarded generally without any distinction of debt from damages, thus — “It is considered that the plaintiff recover against the defendant $-with interest as aforesaid, being the money payable by him to the plaintiff by reason of the premises, and $-for his costs of suit,and that he have execution therefor.”
But for the Act of 1812, the old form of extending judgment in cases of trespass would probably have continued, as shown in 2 Harris Entries, 87 and 148, where the verdict names the damages found by the jury, and the memorandum attached, called the release, states that judgment was rendered for the damages laid in the declaration and costs of suit; the said damages to be released upon the payment of the sum of $-with interest thereon from-until paid and costs.” We again call attention to the fact that the statutes 3 Henry VII, Chap. 10, and 19, Henry VII, Chap. 20, which declared that the person whose judgment shall be affirmed on writ of error “shall recover his costs and-damages for his delay and wrongful vexation in the same," make no distinction between judgments rendered on contracts and those in tort. Certainly there can be no reason in public policy or justice why interest by way of damages should not equally be allowed in the latter class of cases, and any such distinction would be merely artificial. Indeed there seems to be more hardship in withholding *171 interest in such recoveries than there could be in judgments; on contract. The suitors in such actions are generally needy and less able to bear the consequences of being “ delayed of their execution to their great and importable hurt, loss' and charges ” (in the word's of the latter statute), than merchants who may be supposed to have reckoned the chances of such delays in the prices. Such a judgment, creditor who has been maimed for life, or whose daughter-may have been debauched, or property taken from him, by a wealthy defendant, should certainly in justice be allowed some indemnification where appeals are 'taken “to the intent only to delay execution of the said judgment.” To pay him only the principal of the judgment after he has followed the defendant into every court accessible to him, and been obliged at last to institute proceedings to set aside conveyances contrived to cheat him out of his recovery, might be hut to give him but a barren victory, as disastrous as a defeat.
But it is earnestly insisted by the counsel of the defendants, that in the recent case of Keller vs. Ashford, 133 U.. S., 617, the Supreme Court has declared that a judgment rendered in an action sounding in tort bears no interest.. We have examined the case carefully, and we cannot think the court'tould have intended to assert that general proposition. In that case Keller filed a bill to subject Ash? ford’s land to the payment of a mortgage note for $2,000 made February 21, 1876, bearing interest at 8 per cent, yearly until paid. The equity court dismissed the bill, and this decree was affirmed by this court in General Term. An appeal was taken to the Supreme Court of the United States, and the defendant there moved to dismiss the appeal because the amount involved was beneath the jurisdiction.. The statute then applicable regulating the right of appeal in the District of Columbia, limited it to cases “ where the matter in dispute,,exclusive of costs, exceeds the value of $2,500.” The point whether interest should be computed *172 on a judgment or decree after it'had been entered was not involved, and was entirely immaterial to the inquiry. The sole question -before the court on- this motion was whether the matter in dispute did exceed the prescribed limit; and that depended upon the query whether the decree itself might properly declare that interest upon the note should be calculated from its maturity, and thus make that interest part of the amount included in the decree itself. In deciding this question the court said : “ In a suit founded upon contract the sum in dispute at the time of the judgment or decree appealed from, including any interest then accrued, is the test of appellate jurisdiction,” and in support of this position reference is made to four cases; one of which, New York Elevated Railroad vs. Fifth National Bank, 108 U. S., 698, was not founded upon contract, but was an action brought by the bank to recover damages for injuries caused by the construction of the railroad in front of the plaintiff's real estate.
The opinion proceeds: “ By the express terms of the promissory note sued on in this case, it bore interest at the rate of 8 per cent, yearly from its date until paid. Computing interest accordingly, the- sum in dispute was much more than $2,500 at the time of the decree in General Term, which was the decree from which *this appeal was taken.”
These sentences contain the decision upon the only question involved in the motion', and the head-note of the report properly limits their scope to that point.
. But the counsel for the defendant, in that case, in arguing that “ the matter in dispute ” at the time of the decree appealed from did not exceed the value of $2,500, had cited two. decisions of the Supreme Court, having no applicability to the question really involved in the case, but relating to the other and different inquiry, whether interest upon the judgments in those cases after they had been entered, could be added to swell the matter in dispute to the appealable limit? *173 However, this last point might have been decided in those cases, they could not bear upon the real question before the court in Ashford’s Case, which, as we have seen, was not whether a judgment or decree should bear interest, after it had been entered; but whether the decree to be given in that case should have included and consisted in part of interest upon the mortgage notes.
The Supreme Court, however, without noticing this distinction, disposed of these citations in this sentence: “ In Railroad Company vs. Trook, 100 U. S., 112, cited for the appellee, as in District of Columbia vs. Gannon, 130 U. S., 127, the judgment in Special Term was for damages in an action sounding in tort, which bore no interest, either by the general law or by the judgment of affirmance in General Term.”
An examination of those cases will show that we have correctty described their scope and import.
Trook’s Case was an action by a lot-holder in Washington against the Railroad Company, to recover damages for its improper use of a public street which he alleged caused an injury to his property — like the case of New York Elevated Railroad vs. Fifth Avenue Bank, 135 U. S., before referred to'. The judgment below was reduced by a remittitur and affirmed by the General Term for $2,500. In the Supreme Court the plaintiff moved to dismiss the appeal,, because the matter in dispute did not exceed $2,500, and the motion was allowed. The Chief Justice makes no reference to the nature of the action, but uses language that would be applicable to any suit, whether on contract or in tort. The brief opinion is as follows: “ In cases brought here by writ of error for the re-examination of judgments-of affirmance in the Supreme Court of the District of Columbia, the value of the matter is determined by the judgment, affirmed without adding interest or costs. The judgment in this case, after the $1,500 had been remitted to avoid a new trial, did not exceed $2,500; such being the case, under the- *174 rule established in Railroad Company vs. Grant, 98 U. S., 398, our jurisdiction has been taken away.”
There is not a word in this opinion to intimate that the-decision was based upon the character of the action. The Chief Justice speaks of “cases” generally, brought on appeal and of interest in such cases on the judgment affirmed, without reference to the form of action in which the judgment was rendered.
In the Gannon Case, the plaintiff recovered judgment for $5,000 for personal injuries sustained by reason of a defect in a paved street, which was affirmed in the General Term by an order saying nothing about interest; and an appeal was taken to the Supreme Court. There, a motion was made by the plaintiff below to dismiss, upon the ground that the matter in dispute did not exceed $5,000, the limit of jurisdiction under the Act of March 3,1885. Chief Justice Waite, in his opinion allowing the motion, quotes from the opinion in Trook’s Case, that “the value of the matter in dispute is determined by the judgment affirmed, without adding interest or costs,” and refers to other cases, includr ing New York Elevated Railroad vs. Fifth Avenue Bank. He then says: “Where interest, instead of accompanying the judgment or decree as damages for the detention of a specific amount adjudged or decreed, is part of the claim litigated, and the judgment or decree is so framed as to provide for it to run from a period antecedent to the rendition of such judgment or decree; or in actions ex contractu according to the terms of the contract upon which the action is based, jurisdiction may attach.”
“This result would: have followed here, if, by the judgment of affirmance, interest had been directed to be added to the judgment at Special Term. As it is; however, the judgment falls below the amount necessary to give us jurisdiction.”
While this seems to be an authority to sustain the ruling on the real question in Ashford’s Case, we can discover *175 nothing in it indicating that the order overruling the motion to dismiss was based upon the idea that interest was not to be allowed upon judgments in tort. On the contrary, the Chief Justice plainly intimates that the General Term had the right to direct interest to be added to the judgment, notwithstanding it was apparent it had been rendered for damages sounding in tort. This language seems quite inconsistent with the intimation in the sentence we have been considering, that judgments for damages sounding in tort bear no interest “ by the general law ;” and it seems plainly inconsistent with the language of the law in Section 966 of the Revised Statutes, which distinctly says that “ interest shall be allowed on all judgments in civil causes recovered in a Circuit or District Court;” a provision under which the Circuit Courts and the Supreme Court have recognized that the section applies to other actions besides those ex contractu / as in New York Elevated Railroad vs. Fifth National Bank.
We cannot, therefore, suppose the observation made by the learned justice in the opinion in Ashford’s Case, in denying the authority of the two cases cited in the argument, could have been intended to express the opinion of the Supreme Court upon the important question we are now considering.
But, however this may be, it is manifest the observation was beyond the question under consideration, and “not essential to the decision;” and we have the authority of the Supreme Court reiterated in the recent case in the same volume (Railroad Co. vs. Pierce Co., 133 U. S., 503), to consider it as obiter dictum. In that case the court repudiated the construction that had been given to one of its previous decisions by the General Land Office ever since its announcement thirteen years before; and replying to the argument that the practice thus followed for that length of time by the Government officers should not be disturbed, in its opinion delivered by Mr. Justice Field, said:
“After the decision of the court in the Leavenworth Case *176 the Land Department changed its practice and refused to-allow the deficiencies arising from sales or other disposition made, or from the attachment of pre-emption.or homestead rights before the date of the act, to be made up from selections within the indemnity limits. But that decision did not warrant the change. The question .in that case was not for what deficiencies indemnity could be had, but what lands could be taken for deficiencies which existed. If what was then said indicated that deficiencies which could be supplied were limited to such as might arise after the the passage, of the act, it was a mere dictum not essential to the decision, and therefore not authoritative and binding.”
That the mandates from the Supreme Court omitted to direct the affirmed judgments should bear interest, cannot operate to deprive the plaintiffs of interest if it is secured to them by law. In Amiss vs. Smith, 16 Peters, 311, the Supreme Court said: “ We can see no good reason why interest upon a judgment that is secured by positive law is not as much a part of the judgment as if expressed in it. The legislature says ‘all judgments shall bear interest at the rate of 8 per cent.’ Can the judgment be satisfied without paying the interest?” And in Perkins vs. Fourinquet, 14 How., 331, the court said : “ In such cases the judgment bears interest by force of the law, although upon the face of it it may not purport to carry interest.”
But if the omission of the allowance from the mandate-shall embarrass the plaintiff’s right, the Supreme Court would not hesitate to amend the judgment on motion; as was ordered by Chief Justice Marshall in Bank of Kentucky vs. Wistar, 3 Peters, 432.
The contemporaneous appropriation by Congress during the years in which several of these damage suits were recovered against the District of Columbia is not without significance, as a kind of legislative construction of the statutes we have been examining.
In 25 Statutes at Large, 7 (Acts of 1888), appropriation *177 is made of $7,604 to pay several enumerated judgments against the District, among which is that of John P. Lar-man for $3,000 damages recovered for injuries suffered from a fall into an unguarded area, “ together with a further sum to pay the interest of said judgments from the date the same became due until the day of their payment.” On page 371 of the same volume is another appropriation of $9,000, to pay other enumerated judgments against the District, together with a further sum to pay interest upon them. So, on page 913, $1,894 is appropriated to pay similar judgments, together with a further sum to pay interest on the judgments, one of which, that of Edwin Muller, was recovered in an action for damages for alleged negligence.
So, in Volume 24, page 264 (1886), a like appropriation of $16,700 was made to pay similar judgments, “including interest and costs.” The names of the creditors are not given in this act, hut from our experience of suits against the District, it may be fairly assumed that part of them, at least, were rendered in actions not ex contractu,. And in the Gannon suit, which was quoted to the court in Ashford’s Case, to show that interest could not be allowed in such an action, Congress appropriated money (payable as the other moneys were, equally by the Government and the District), for the principal and interest on that claim.
We have examined this question with care; and being satisfied the practice of this court was right, -we shall pass an order directing the clorlc in entering the judgments on the mandates to allow interest from their respective dates in the Circuit Court.